J. PAUL MOORHEAD (SBN 240029)
pmoorhead@bushgottlieb.com
KIRK M. PRESTEGARD (SBN 291942)
kprestegard@bushgottlieb.com
ADAM KORNETSKY (SBN 336919)
akornetsky@bushgottlieb.com
BUSH GOTTLIEB
A Law Corporation
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

Attorneys for Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN AND DIRECTORS OF THE MOTION PICTURE INDUSTRY HEALTH PLAN,<br><br>Plaintiffs,<br><br>vs.<br><br>EMMETT FURLA FILMS HOLDINGS, LLC, a California Limited Liability Company; GEORGIA FILM FUND SEVEN PRODUCTIONS, LLC, a Louisiana Limited Liability Company; GEORGIA FILM FUND SEVENTEEN, LLC; a Delaware Limited Liability Company; EDVER FILMS BOSS LEVEL, LLC, a Delaware Limited Liability Company; PLASTIC FISH (ESCAPE), LLC, a Delaware Limited Liability Company; RANDALL EMMETT/GEORGE FURLA PRODUCTIONS, LLC, A California Limited Liability Company; and EMMETT FURLA OASIS FILMS, LLC, a California Limited Liability Company,<br><br>Defendants. | **CASE NO.: 2:23-cv-00405**<br><br>**COMPLAINT FOR UNPAID CONTRIBUTIONS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 AND BREACH OF COLLECTIVE BARGAINING AGREEMENTS**<br><br>**(29 § U.S.C. 185; 29 U.S.C. §§ 1132 and 1145)** |

Plaintiffs Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan (collectively, "Directors") allege as follows:

## JURISDICTION AND VENUE

1. This action by the Directors of the Motion Picture Industry Pension Plan and Motion Picture Industry Health Plan (collectively, the "Plans") is based on the failure and refusal of Defendants Emmett Furla Films Holdings, LLC; Georgia Film Fund Seven Productions, LLC; Georgia Film Fund Seventeen, LLC; Edver Films Boss Level, LLC; Plastic Fish (Escape), LLC; Randall Emmett/George Furla Productions, LLC; and Emmett Furla Oasis Films, LLC (collectively, "Defendants") to honor their obligations to the Plans, as required by the terms of certain collective bargaining agreements and the trust agreements governing the Plans, and pursuant to § 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1145, and § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331; ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1); and LMRA § 301(c), 29 U.S.C. § 185(c).

3. Venue is based on the location of the office in which the Plans are administered, located in the Central District of California. As such, venue is appropriate pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), and LMRA § 301(a), 29 U.S.C. § 185(a).

## PARTIES

4. The Plans are "employee benefit plans" within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), in that they were created pursuant to written declarations of trust ("Trust Agreements") between the International Alliance of Theatrical Stage Employees ("IATSE") and certain other labor organizations, and motion picture and television industry producer employers participating in the Plans ("Producers"), and

are maintained for the purpose of providing their participants and beneficiaries with medical, surgical and hospital benefits in the event of sickness, accident, disability or death, and retirement benefits. The Plans were created and now exist pursuant to LMRA § 302(c), 29 U.S.C. § 186(c).

5. The Plans are "multiemployer plans" within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A), in that more than one employer is required to contribute to the Plans and the Plans are maintained pursuant to collective bargaining agreements between the unions and Producers.

6. The Directors are "fiduciaries" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), half of whom have been appointed by the Producers and half of whom have been appointed by the IATSE; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 399; and other applicable labor organizations (collectively, "Unions"). The Directors have an obligation to protect the Plans' assets including ensuring that signatory employers properly remit to the Plans contractually required pension and health contributions.

7. Under the Trust Agreements, the Directors have control and authority over the Plans, including the authority to file actions such as the present case to protect the Plans' trust assets.

8. At all times relevant herein, the Unions have been labor organizations representing employees in the motion picture and television industry, which is an industry affecting commerce within the meaning of LMRA § 501(1), 29 U.S.C. § 142(1).

9. At all times relevant herein, Emmett Furla Films Holdings, LLC ("Emmett Furla Holdings") is and has been a limited liability company organized and existing under the laws of the State of California, registered and transacting business in the State of California, with its principal place of business in the State of California, and is an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and LMRA § 501(3), 29 U.S.C. § 142(3). As such, Emmett Furla Holdings is also an

"employer" as that term is used in LMRA § 301, 29 U.S.C. § 185.

10. At all times relevant herein, Georgia Film Fund Seven Productions, LLC ("Georgia Film Fund Seven") is and has been a limited liability company organized and existing under the laws of the State of Louisiana, transacting business in the State of California, and is an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and LMRA § 501(3), 29 U.S.C. § 142(3). As such, Georgia Film Fund Seven is also an "employer" as that term is used in LMRA § 301, 29 U.S.C. § 185.

11. At all times relevant herein, Georgia Film Fund Seventeen, LLC ("Georgia Film Fund Seventeen") is and has been a limited liability company organized and existing under the laws of the State of Delaware, transacting business in the State of California, and is an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and LMRA § 501(3), 29 U.S.C. § 142(3). As such, Georgia Film Fund Seventeen is also an "employer" as that term is used in LMRA § 301, 29 U.S.C. § 185.

12. At all times relevant herein, Edver Films Boss Level, LLC ("Edver Films") is and has been a limited liability company organized and existing under the laws of the State of Delaware, transacting business in the State of California, and is an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and LMRA § 501(3), 29 U.S.C. § 142(3). As such, Edver Films is also an "employer" as that term is used in LMRA § 301, 29 U.S.C. § 185.

13. At all times relevant herein, Plastic Fish (Escape), LLC ("Plastic Fish") is and has been a limited liability company organized and existing under the laws of the State of Delaware, transacting business in the State of California, and is an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and LMRA § 501(3), 29 U.S.C. § 142(3). As such, Plastic Fish is also an "employer" as that term is used in LMRA § 301, 29 U.S.C. § 185.

14. At all times relevant herein, Randall Emmett/George Furla Productions, LLC ("Emmett/Furla Productions") is and has been a limited liability company

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

organized and existing under the laws of the State of California, registered and transacting business in the State of California, with its principal place of business in the State of California, and is an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and LMRA § 501(3), 29 U.S.C. § 142(3). As such, Emmett/Furla Productions is also an "employer" as that term is used in LMRA § 301, 29 U.S.C. § 185.

15. At all times relevant herein, Emmett Furla Oasis Films, LLC ("EFO") is and has been a limited liability company organized and existing under the laws of the State of California, registered and transacting business in the State of California, with its principal place of business in the State of California, and is an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and LMRA § 501(3), 29 U.S.C. § 142(3). As such, EFO is also an "employer" as that term is used in LMRA § 301, 29 U.S.C. § 185.

16. On information and belief, Emmett Furla Holdings is the successor to and continuation of Emmett/Furla Productions, and, as such, Emmett Furla Holdings assumed all assets and liabilities of Emmett/Furla Productions.

17. On information and belief, EFO is also a successor to and continuation of Emmett/Furla Productions, and controls Emmett Furla Holdings, such that Emmett Furla Holdings is an alter ego of EFO insofar as EFO commingles its assets with those of Emmett Furla Holdings, inadequately capitalizes Emmett Furla Holdings, and uses Emmett Furla Holdings and other signatory single purpose production companies to evade liability to the Plans. Hereinafter, because there is no meaningful separation between them, Emmett Furla Holdings, Emmett/Furla Productions, and EFO will be referred to collectively as the "Emmett Furla Entities."

18. On information and belief, the Emmett Furla Entities are jointly and severally liable for all claims alleged herein.

## COMMON ALLEGATIONS

19. The Plans are established and maintained through certain collective

bargaining agreements between the Producers and the Unions, and the Trust Agreements enacted by the Producers and the Unions. The Producers are represented by the Alliance of Motion Picture and Television Producers, a trade association responsible for negotiating virtually all the industry-wide entertainment union collective bargaining agreements, commonly referred to as the "AMPTP."

20. At all times material herein, Emmett Furla Holdings and Emmett/Furla Productions have each been a "Term Signatory," which means that by executing a Term Signatory agreement with the IATSE, Emmett Furla Holdings and Emmett/Furla Productions agreed to be bound by multiple collective bargaining agreements, including the IATSE-Producer Basic Agreement, the Theatrical and Television Motion Picture Area Standards Agreement, and the Low-Budget Theatrical Agreement, among others, as well as any amendments, extension, or renewals thereof (collectively, the "Basic Agreement"), and the Trust Agreements governing the Plans.

21. All of the following motion pictures were jointly produced by either Emmett Furla Holdings or Emmett/Furla Productions, and by a single-purpose production company (such as Georgia Film Fund Seven, Georgia Film Fund Seventeen, Edver Films, or Plastic Films): (A) *10 Minutes Gone*; (B) *90 Minutes in Heaven*; (C) *Acts of Violence*; (D) *Aftermath – 478*; (E) *Backtrace* (2018); (F) *Boss Level*; (G) *Broken City*; (H) *Bus 657*; (I) *Empire State*; (J) *Escape Plan 2*; (K) *Escape Plan 3*;(L) *Extraction*; (M) *First Kill*; (N) *Gotti*; (O) *Inconceivable*; (P) *Lay the Favorite*; (Q) *Lone Survivor*; (R) *Marauders*; (S) *Precious Cargo*; (T) *The Prince*; (U) *Reprisal*; (V) *The Row*; (W) *Silence*; and (X) *Southern Fury* (collectively, the "Pictures").

22. Since all Pictures were produced by Emmett Furla Holdings or Emmett/Furla Productions in their capacity as a Term Signatory, all Pictures are covered by and subject to the relevant terms and conditions set forth in the applicable Basic Agreement and Trust Agreements.

23. At all times material herein, Emmett Furla Holdings and Emmett/Furla Productions have also been signatory to various separately executed, picture-specific Project Agreements, Trust Acceptance agreements, and/or Consent Agreements that obligated Emmett Furla Holdings and Emmett/Furla Productions to pay contributions to the Plans in the manner and under the terms set forth therein with respect to production and distribution of the applicable Pictures. Collectively, the Basic Agreement, Project Agreements, Trust Acceptance agreements, and Consent Agreements, as applicable, are referred to herein as the "Signatory Documents."

24. Georgia Film Fund Seven is a single-purpose production company that is owned and/or controlled by the Emmett Furla Entities, and was established for the sole purpose of producing the motion picture *Broken City*. Pursuant to a separately executed, picture-specific Project Agreement and Trust Acceptance agreement, Georgia Film Fund Seven has been signatory to the Basic Agreement and bound by the terms and conditions of the Basic Agreement, the Trust Agreements, and all other applicable Signatory Documents.

25. Georgia Film Fund Seventeen is a single production company that is owned and/or controlled by the Emmett Furla Entities, and was established for the sole purpose of producing the motion picture *Lone Survivor*. Pursuant to a separately executed, picture-specific Project Agreement and Trust Acceptance agreement, Georgia Film Fund Seventeen has been signatory to the Basic Agreement and bound by the terms and conditions of the Basic Agreement, the Trust Agreements, and all other applicable Signatory Documents.

26. Edver Films is a single-purpose production company that is owned and/or controlled by the Emmett Furla Entities, and was established for the sole purpose of producing the motion picture *Boss Level*. Pursuant to a separately executed, picture-specific Project Agreement and Trust Acceptance agreement, Edver Films has been signatory to the Basic Agreement and bound by the terms and conditions of the Basic Agreement, the Trust Agreements, and all other applicable

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Signatory Documents.

27. Plastic Fish is a single-purpose production company that is owned and/or controlled by the Emmett Furla Entities, and was established for the sole purpose of producing the motion picture *Escape Plan 2*. Pursuant to a separately executed, picture-specific Project Agreement and Trust Acceptance agreement, Plastic Fish has been signatory to the Basic Agreement and bound by the terms and conditions of the Basic Agreement, the Trust Agreements, and all other applicable Signatory Documents

28. Under ERISA § 515, 29 U.S.C. § 1145, employers such as the Defendants, that are obligated to make contributions to a multiemployer plan pursuant to one or more collectively bargained agreements, are required to make such contributions in accordance with the terms and conditions of each such plan or agreement.

29. Further, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes the Directors to enforce the requirements set forth in ERISA § 515 against the Defendants when they fail to comply with their obligation to make contributions to the Plans timely and in the correct amounts.

30. The Directors are informed and believe, and thereon allege, that the Defendants or their agents, as applicable, entered into written agreements with certain territorial distributors of the Pictures, pursuant to which those territorial distributors licensed the right to exhibit the Pictures in certain markets, including but not limited to motion picture theaters ("Theatrical Market"), the free television market, and the "Supplemental Markets" (including, but not limited to, pay television, videocassettes and DVDs).

31. Pursuant to the Signatory Documents, the Emmett Furla Entities are under an obligation to make certain monetary contributions to the Plans based upon a percentage of gross receipts derived from exploitation of the Pictures in the free television market and in the Supplemental Markets, collectively referred to herein as

"Residuals Contributions."

32. Pursuant to the Signatory Documents, Georgia Film Fund Seven is jointly and severally obligated with the Emmett Furla Entities to make Residuals Contributions based upon gross receipts derived from exploitation of *Broken City* in the free television market and Supplemental Markets.

33. Pursuant to the Signatory Documents, Georgia Film Fund Seventeen is jointly and severally obligated with the Emmett Furla Entities to make Residuals Contributions based upon gross receipts derived from exploitation of *Lone Survivor* in the free television market and Supplemental Markets.

34. Pursuant to the Signatory Documents, Edver Films is jointly and severally obligated with the Emmett Furla Entities to make Residuals Contributions based upon gross receipts derived from exploitation of *Boss Level* in the free television market and Supplemental Markets.

35. Pursuant to the Signatory Documents, Plastic Fish is jointly and severally obligated with the Emmett Furla Entities to make Residuals Contributions based upon gross receipts derived from exploitation of *Escape Plan 2* in the free television market and Supplemental Markets.

36. Pursuant to the Signatory Documents, the Directors have authority to conduct an audit of the books and records of signatory employers for the purpose of determining the accuracy of Residuals Contributions made to the Plans. The Trust Agreements provide that if such an audit discloses a delinquency or underpayment of such Residuals Contributions, the cost of the audit shall be borne by the signatory that is found to be delinquent, and if litigation is required to compel such an audit, the costs of such litigation are to be borne by the signatory.

37. At all times material herein, pursuant to the terms of the Signatory Documents, the Defendants have been under an affirmative duty to cooperate with the audit process and to provide the Plans with information, such as books and records pertaining to exploitation of the Pictures, so that the Plans can determine whether

Residuals Contributions and other contribution obligations have been paid properly and in the correct amounts.

38.　As part of their normal-course audit program, the Plans announced an audit of the record of contributions paid by the Defendants (the "Audit") for the audit period January 1, 2014 through December 31, 2018, which was subsequently extended through June 30, 2020 (the "Audit Period").

39.　Over several years, the Defendants engaged with the Audit only intermittently, often going long stretches without meaningfully responding to requests from the Plans' independent auditors and/or outside counsel at all, which made the audit process take far longer than it would have had the Defendants complied with their obligations to cooperate with the auditors.

40.　When the Defendants did respond, they typically provided largely incomplete and/or nonresponsive records, which is itself a violation of the Defendants' obligation to maintain complete and accurate records that accurately account for gross receipts derived by the Defendants from their exploitation of the Pictures.

41.　As a result of the Audit, and as described in detail in an audit report presented to the Defendants on or about September 9, 2022, the Directors are informed and believe, and on that basis allege, the Defendants failed to accurately pay Residuals Contributions owed to the Plans in connection with Defendants' exploitation of the Pictures.

42.　Upon issuance of the audit report, and in accordance with the rules adopted by the Plans' Audit & Collections Committee, the Defendants were allowed 45 days to file written exceptions to the report, and then, after any disputes have been resolved, an additional 30 days to make payment. According to the rules, if written exceptions are not filed within 45 days, the audit report becomes final and the auditee is deemed to have accepted its results.

43.　The Defendants did not file written exceptions to the report or otherwise

dispute the findings within the 45-day period, and so are deemed to have accepted the results of the audit report.

44. The Defendants did not pay any part of the Residuals Contributions found to be owing.

45. Based on the express terms of the Signatory Documents, the Directors reposed trust and confidence in the Defendants and relied on the Defendants to accurately report and pay the correct amount of Residuals Contributions to the Plans. Defendants' breach of the Signatory Documents, and breach of the trust and confidence the Directors reposed in them, inter alia, serves to toll any statute of limitations, if applicable.

## FIRST CAUSE OF ACTION

## (Violation of ERISA § 515, 29 U.S.C. 1145)

46. The Directors incorporate by reference each allegation contained in Paragraphs 1 through 45 as though fully set forth herein.

47. The Directors are informed and believe, and thereon allege, that the Defendants entered into written agreements with certain territorial distributors ("Distribution Agreements") for the purpose of exhibiting the Pictures in certain domestic and foreign territories and in markets including but not limited to the Theatrical Market, free television markets, and the Supplemental Markets.

48. The Directors are informed and believe, and thereon allege, that pursuant to these Distribution Agreements, the Defendants received payments in the nature of advances and/or minimum guarantees ("Gross Receipts") as consideration for the right to distribute the Pictures in the markets and for the terms specified in each such Distribution Agreement.

49. At all times relevant hereto, the Defendants have been responsible for complying with all terms and conditions of the Signatory Documents with respect to the Pictures, including but not limited to payment of Residuals Contributions, based upon Gross Receipts derived from exploitation of the Pictures in the free television

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1 market and Supplemental Markets, in the proper amounts and when due.

50. The Audit disclosed that the Defendants derived substantial Gross Receipts from exploitation of the Pictures, yet did not report or make any Residuals Contributions to the Plans on the basis of such Gross Receipts.

51. Pursuant to the Audit, the Directors are informed and believe, and on that basis allege, the Emmett Furla Entities failed to pay the proper amount of Residuals Contributions due in connection with Gross Receipts derived from exploitation of the Pictures, in amounts to be determined at trial but not less than $2,429,158.00, inclusive of the amounts stated in Paragraphs 52 through 55, *infra*.

52. Pursuant to the Audit, the Directors are informed and believe, and on that basis allege, Georgia Film Fund Seven failed to pay the proper amount of Residuals Contributions due in connection with Gross Receipts derived from exploitation of *Broken City*, in amounts to be determined at trial but not less than $321,231.00.

53. Pursuant to the Audit, the Directors are informed and believe, and on that basis allege, Georgia Film Fund Seventeen failed to pay the proper amount of Residuals Contributions due in connection with Gross Receipts derived from exploitation of *Lone Survivor*, in amounts to be determined at trial but not less than $837,998.00.

54. Pursuant to the Audit, the Directors are informed and believe, and on that basis allege, Edver Films failed to pay the proper amount of Residuals Contributions due in connection with Gross Receipts derived from exploitation of *Boss Level*, in amounts to be determined at trial but not less than $186,615.00.

55. Pursuant to the Audit, the Directors are informed and believe, and on that basis allege, Plastic Fish failed to pay the proper amount of Residuals Contributions due in connection with Gross Receipts derived from exploitation of *Escape Plan 2*, in amounts to be determined at trial but not less than $163,182.00.

56. The Audit further disclosed that the Defendants failed to report large amounts of accounts receivable to the Plans, and when questioned by the auditors the

Defendants failed or refused to provide evidence that these accounts receivable were in fact uncollected and still outstanding.

57. Accordingly, the Directors are informed and believe, and on that basis allege, the Defendants failed to pay the proper amount of Residuals Contributions due in connection with amounts the Defendants represented but failed to prove to be uncollected accounts receivable derived from exploitation of certain Pictures, in amounts to be determined at trial but not less than $216,762.00.

58. By their execution of the Signatory Documents, and in accordance with ERISA § 502(g)(2), 29 U.S.C. §1132(g)(2), the Defendants agreed that, in the event of a delinquent payment or default in payment, they would be liable to the Directors for liquidated damages measured as either 20% of the total amount of Residuals Contributions then due, or as interest on the amount then due at the rate of 12%, commencing ten business days after notice of the delinquency through to the date of judgment, whichever is greater, for each delinquency.

59. The Directors are informed and believe that the Defendants owe liquidated damages in connection with exploitation of the Pictures in an amount to be established by proof at trial.

60. By their execution of the Signatory Documents, and in accordance with ERISA § 502(g)(2), 29 U.S.C. §1132(g)(2), the Defendants agreed that, in the event of a delinquent payment or default in payment, they would be liable to the Directors for interest on all delinquent contributions at the rate of 1% per month, commencing ten business days after notice of the delinquency through to the date of the judgment.

61. The Directors are informed and believe that the Defendants owe interest in connection with exploitation the Pictures in an amount to be established by proof at trial.

62. By their execution of the Signatory Documents, and in accordance with ERISA § 502(g)(2), 29 U.S.C. §1132(g)(2), the Defendants agreed to be liable for all expenses incurred in the enforcement of the Signatory Documents and/or collection

of any and all unpaid contributions, including, but not limited to, attorney's fees and costs and the cost of the Audit.

63. The Directors have incurred enforcement and collection costs, including attorney's fees and audit costs, in conjunction with the Defendants' failure to make Residuals Contributions in connection with exploitation of the Pictures, in amounts to be established by proof at trial.

## SECOND CAUSE OF ACTION

### (Violation of LMRA § 301(a), 29 U.S.C. § 185(a))

64. The Directors incorporate by reference each allegation contained in Paragraphs 1 through 63 as though fully set forth herein.

65. The Defendants, separately and collectively, breached the Signatory Documents by failing to make required payments of Residuals Contributions with respect to their exploitation of the Pictures, as required and per the terms and conditions set forth in each applicable Basic Agreement and the Trust Agreements governing the Plans.

66. The Defendants, separately and collectively, breached the Signatory Documents by failing to maintain complete and accurate records that accurately account for Gross Receipts derived by the Defendants from their exploitation of the Pictures, as required and per the terms and conditions set forth in each applicable Basic Agreement and the Trust Agreements governing the Plans.

67. As a result of the Defendants' breach of the Signatory Documents and the Trust Agreements governing the Plans, the Directors have suffered damages in an amount to be established by proof at trial, including but not limited to unpaid Residuals Contributions, liquidated damages, interest, attorneys' fees and costs, and audit costs.

## PRAYER FOR RELIEF

WHEREFORE, the Directors pray for judgment against Defendants Emmett Furla Films Holdings, LLC; Georgia Film Fund Seven Productions, LLC; Georgia

Film Fund Seventeen Productions, LLC; Edver Films Boss Level, LLC; Plastic Fish (Escape), LLC; Randall Emmett/George Furla Productions, LLC; and Emmett Furla Oasis Films, LLC, jointly and severally, as follows:

1. For unpaid Residuals Contributions in an amount to be established by proof at trial;

2. For audit costs in an amount to be established by proof at trial;

3. For liquidated damages in an amount to be established by proof at trial;

4. For interest in an amount to be established by proof at trial;

5. For reasonable attorney's fees and other costs of this action incurred by the Directors, in amounts to be established by proof at trial; and

6. For such additional relief as this Court deems just and proper.

DATED: January 20, 2023

J. PAUL MOORHEAD
KIRK M. PRESTEGARD
ADAM KORNETSKY
BUSH GOTTLIEB, A Law Corporation


By:  /s/ Kirk M. Prestegard
     KIRK M. PRESTEGARD
Attorneys for Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260